673 P.2d 951

**Anne M. DAVIS, Plaintiff-Appellant,**

v.

**Carl H. MANGELSDORF, M.D. and Chastine Mangelsdorf, his wife, Defendants-Appellees.**

**No. 1 CA–CIV 6489.**

Court of Appeals of Arizona, Division 1, Department A.

Sept. 20, 1983.

Review Denied Dec. 6, 1983.

---

3. We decline to impose fees against Challenge's counsel because we cannot say from this record that counsels' conduct constituted a willful abuse of the judicial process. *Roadway Express, Inc. v. Piper,* 447 U.S. at 766, 100 S.Ct. at 2464.

208

MacLean & Jacques, Ltd. by Cary T. Inabinet, Phoenix, for plaintiff-appellant.

Teilborg, Sanders, Haga & Parks, P.C. by Frank A. Parks, Phoenix, for defendants-appellees.

OPINION

KLEINSCHMIDT, Presiding Judge.

This lawsuit was initiated by Anne M. Davis to recover for personal injuries sustained in an automobile accident caused by a driver who lost control of his vehicle while suffering an epileptic seizure. The primary issue on appeal is whether Ms. Davis can maintain a cause of action against the driver's former physician who had advised the driver to discontinue the use of an anti-convulsive drug approximately 17 years prior to the accident.

The complaint was filed in 1981 in Maricopa County Superior Court against Dr. Carl H. Mangelsdorf and his wife. The Mangelsdorfs filed a motion to dismiss which was granted by formal order from which Davis timely appealed. We find no error and affirm the judgment of the trial court.

The following facts which are alleged in the complaint must be presumed true for purposes of an appeal from the order of dismissal. *Maldonado v. Southern Pacific Transportation Co.*, 129 Ariz. 165, 166, 629 P.2d 1001, 1002 (App.1981). In January, 1979, Davis was seriously injured as a result of an accident which occurred in Anchorage, Alaska. The accident happened when William J. Smith suffered a seizure, causing him to go into a convulsion and lose control of the vehicle he was driving resulting in injuries to the appellant Davis.

Smith had previously experienced grand mal seizures between 1958 and 1962 while he was under the care of Dr. Mangelsdorf in Flint, Michigan. Smith was treated with Dilantin, an anti-convulsive drug, to control the seizures. In 1962 Dr. Mangelsdorf reduced the dosage and subsequently advised Smith to discontinue using Dilantin. Dr. Mangelsdorf last treated Smith in 1964.

The complaint alleges that Dr. Mangelsdorf was negligent in advising Smith to cease taking Dilantin, in failing to warn Smith of the dangers of discontinuing use of an anti-convulsive drug, in failing to consult with a neurologist and in negligent treatment of Smith after his last seizure preceding the accident.

We must first determine whether Dr. Mangelsdorf owed a duty to protect Davis from the injury of which she complains. *See Parish v. Truman*, 124 Ariz. 228, 230, 603 P.2d 120, 122 (App.1979). Absent a question upon which reasonable minds could differ, the question of whether a duty exists is one of law for the court. *Nicoletti v. Westcor, Inc.*, 131 Ariz. 140, 144, 639 P.2d 330, 334 (1982); *Griffith v. Valley of the Sun Recovery and Adjustment Bureau, Inc.*, 126 Ariz. 227, 230, 613 P.2d 1283, 1286 (App.1980).

Arizona follows the rule set forth in the *Restatement (Second) of Torts* § 315 (1965) to the effect that there is generally no duty to control the conduct of a third person to prevent him from causing harm to another absent a special relationship between the parties. *See Parish v. Truman, supra. See also Grimm v. Arizona Board of Pardons and Paroles*, 115 Ariz. 260, 267, 564 P.2d 1227, 1234 (1977). The *Restatement* § 315 provides:

There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless

(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

(b) a special relation exists between the actor and the other which gives to the other a right to protection.

The relationships which give rise to a duty to control a third party's conduct are

set forth in *Restatement* §§ 316–319. Ms. Davis argues that Dr. Mangelsdorf's duty to her was based upon his special relationship with William Smith, *i.e.,* the doctor-patient relationship that existed between 1958 and 1964. It is in most cases unrealistic to speak of a doctor "controlling" a patient. The usual relationship of doctor to patient is one of ability to influence the patient's conduct. While Ms. Davis does not limit her arguments to any particular section of the *Restatement,* the only relationship between Mangelsdorf and Smith which arguably falls within the *Restatement* is referred to in § 319 which provides in part:

> One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm.

The facts alleged in the pleadings and reasonable inferences to be drawn therefrom are that Dr. Mangelsdorf "took charge" of Smith by treating him for his epilepsy and that Dr. Mangelsdorf should have known that Smith's seizures were likely to cause bodily harm to another in the event that Smith suffered one while driving a motor vehicle.

In support of her contention that Dr. Mangelsdorf owed her a duty Ms. Davis has cited authority from various jurisdictions imposing upon physicians duties to third persons for negligent treatment of a patient. The leading case in this area is *Tarasoff v. Regents of the University of California,* 17 Cal.3d 425, 551 P.2d 334, 131 Cal. Rptr. 14 (1976), in which the California Supreme Court held that a psychotherapist owed a duty towards a potential victim of his patient to warn her either directly or indirectly that the patient intended to do her harm. Other jurisdictions have similarly held that psychologists, psychiatrists and therapists have a duty to warn individuals who are potential victims of their patients. Similarly, courts have imposed a duty on doctors and medical or penal institutions who have physical custody of dangerous individuals to protect third parties by taking reasonable measures to control their charges' conduct. *See Hasenei v. United States,* 541 F.Supp. 999 (D.Md.1982); *Leedy v. Hartnett,* 510 F.Supp. 1125 (M.D.Pa. 1981); *Lipari v. Sears, Roebuck & Co.,* 497 F.Supp. 185 (D.Neb.1980); *Ryan v. State,* 134 Ariz. 308, 656 P.2d 597 (1982); *Bradley Center, Inc. v. Wessner,* 161 Ga.App. 576, 287 S.E.2d 716 (1982), and *McIntosh v. Milano,* 168 N.J.Super. 466, 403 A.2d 500 (1979).

Some jurisdictions have limited the scope of the duty to warn to situations in which there is a specifically identifiable potential victim rather than to find such duty exists to the public at large. *See Leedy v. Hartnett, supra; Thompson v. County of Alameda,* 27 Cal.3d 741, 614 P.2d 728, 167 Cal. Rptr. 70 (1980). With respect to the duty to control patient conduct, some courts have emphasized that absent a legal right or ability to control a patient, the doctor/patient or therapist/patient relationship by itself will not create a duty on the part of the doctor or therapist to protect third parties. *See, e.g., Hasenei v. United States, supra; Bradley Center, Inc. v. Wessner, supra. See generally* Stone, *The Tarasoff Decisions: Suing Psychotherapists to Safeguard Society,* 90 Harv.L.Rev. 358 (1976). The ability to influence patient behavior is likewise an implicit prerequisite to the duty imposed in a long line of cases in which courts have required physicians to protect third parties from patients having a contagious disease. *See, e.g., Hofmann v. Blackmon,* 241 So.2d 752 (Fla.App.1970); *Wojcik v. Aluminum Co. of America,* 18 Misc.2d 740, 183 N.Y.S.2d 351 (1959); *Kaiser v. Suburban Transportation System,* 65 Wash.2d 461, 398 P.2d 14 (1965), *modified,* 65 Wash.2d 461, 401 P.2d 350 (1965).

In the instant case, any direct authority which Dr. Mangelsdorf may arguably have had to control Smith's behavior ended in 1964 when Smith ceased to be his patient. This is in striking contrast to the otherwise factually similar case of *Freese v. Lemmon,* 210 N.W.2d 576 (Iowa 1973). In *Freese* the Iowa Supreme Court held that a pedestrian who was injured in an automobile accident involving a driver who suf-

fered a seizure could maintain an action against the driver's physician. The injured pedestrian claimed that the physician had negligently failed to advise his patient not to drive an automobile. The court did not discuss the basis for concluding that the pleadings stated a cause of action.[1] However, in *Freese,* the driver was under the care of his physician at the time the accident occurred. Had the accident in question occurred during the time period in which Smith was being treated by Dr. Mangelsdorf for his seizures, Davis' case would be much stronger.

■ A duty of care is indispensable to liability for negligence and one element of the duty is foreseeability. *Mountain States Telephone & Telegraph Co. v. Kelton,* 79 Ariz. 126, 285 P.2d 168 (1955). "The risk reasonably to be perceived defines the duty to be obeyed ...." *Chavez v. Tolleson Elementary School District,* 122 Ariz. 472, 476, 595 P.2d 1017, 1021, quoting *Palsgraf v. Long Island Ry. Co.,* 248 N.Y. 339, 344, 162 N.E. 99, 100 (1928).

In *City of Scottsdale v. Kokaska,* 17 Ariz. App. 120, 126, 495 P.2d 1327, 1333 (1972), this court discussed foreseeability as an element of the duty issue stating:

We analyze the cases as saying that in the first instance foreseeability is always a question of law for the court. The court must determine the duty issue of whether an obligation is recognized by the law requiring the defendant to conform to a particular standard of conduct toward the plaintiff. This includes the question of whether the injury to the particular plaintiff was foreseeable. It is not foreseeable, then the trial judge usu-

ally disposes of the matter by dismissal, summary judgment, or the directed verdict route.

■ We find that the injury to Ms. Davis was not foreseeable as a matter of law. We recognize, however, that "foreseeability" like "duty" is "only a word with which we state our conclusion that there is or is not liability; it necessarily begs the essential question." Prosser, *Palsgraf Revisited,* 52 Mich.L.Rev. 1, 15 (1953). It is therefore necessary to set forth the underlying considerations leading to our conclusion.

It is undisputed that Dr. Mangelsdorf did not treat Smith between 1964 and 1979. Further, the primary alleged act of negligence, *i.e.,* the discontinuance of medication, occurred in 1962. The record does not indicate whether Smith had any recurring seizure problems after 1964. We assume without deciding that if Dr. Mangelsdorf was negligent in discontinuing Dilantin or failing to warn Smith of the danger of driving without medication, any injuries caused third parties by such negligence within a reasonable period of time after the negligent act could give rise to liability. *See Restatement* §§ 315 and 319; *Freese v. Lemmon, supra.* However, to extend this duty for fifteen to seventeen years during which time Dr. Mangelsdorf was unaware of Smith's physical condition extends the duty to protect third parties far beyond that contemplated by the *Restatement* § 315 and the common law.

■ While it might be reasonable to find that Dr. Mangelsdorf was able to control or at least affect Smith's behavior while he was Smith's physician, his ability to do so

---

1. While the majority opinion fails to identify the basis for finding liability, the specially concurring opinion of Justice Uhlenhopp found a cause of action pursuant to *Freese v. Lemmon, supra,* and the *Restatement* § 311(1)(b). The *Restatement* § 311(1)(b) provides:

One who negligently gives false information to another is subject to liability for physical harm caused by action taken by the other in reasonable reliance upon such information, where such harm results ... to such third persons as the actor should expect to be put in peril by the action taken.

The "false information" was found to be the misinformation concerning the patient's ability to operate an automobile.

The parties have not argued that this provision of the *Restatement* is applicable under the facts of the instant case. Assuming that the complaint can be read to state a cause of action under this section of the *Restatement* the trial court was correct in dismissing the complaint because the injury to Davis, as we discuss in the text hereafter, was not foreseeable.

after he ceased treating Smith diminished. It is not reasonable to conclude that Smith could rely on advice regarding medication given in 1962 to govern his medical requirements in 1979. While temporal remoteness will not by itself necessarily limit duty flowing from a negligent act, it is, in this case, significant in determining whether the doctor was a substantial factor in causing the harm. *See generally* W. Prosser, Law of Torts, § 43, at 252–253 (4th ed. 1971). *Cf. Harris v. State,* 48 Ohio Misc. 27, 358 N.E.2d 639, (Ohio Ct.Cl.1976). We find it particularly significant that the alleged negligence in the instant case was medical advice appropriate within a limited time frame. This is unlike the negligent act of a manufacturer who places a defective product into the stream of commerce, for which negligence the manufacturer may be liable even if there is a long intervening period before the product injures someone. The condition of the human body changes and it is unreasonable to assume that medical advice given at a fixed time is intended as a statement of appropriate care for a prolonged time period. After the doctor/patient relationship ended, Dr. Mangelsdorf could reasonably expect his former patient to seek competent medical help if his symptoms reoccurred and thereby to receive appropriate advice as to whether he should drive a car. It would, conversely, be unreasonable to conclude that under such circumstances Dr. Mangelsdorf could foresee that his former patient, in the exercise of ordinary prudence, would fail to seek further medical attention over a period of fifteen years.

Accepting as true the facts set forth in the complaint, we conclude that as a matter of law Dr. Mangelsdorf did not owe a duty to protect Ms. Davis from the injuries she suffered as a result of the automobile collision caused by Smith. Dr. Mangelsdorf was not in a relationship with Smith in 1979 to give rise to any such duty nor was his past relationship with Smith sufficient to support a duty that would continue for seventeen years.

Having concluded that the trial court properly dismissed Ms. Davis' complaint for failure to state a cause of action, we do not reach issues raised by the parties with respect to the statute of limitations.

The judgment of the trial court is affirmed.

CONTRERAS and McFATE, JJ., concur.

NOTE: The Honorable YALE McFATE was authorized to participate in this case by the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. art. VI, § 20.