WELKE v KUZILLA

Docket No. 75515. Submitted November 13, 1984, at Detroit.—Decided
    February 6, 1985.

On October 13, 1981, plaintiff, Robert J. Welke, personal repre-
    sentative of the estate of Judith L. Welke, deceased, brought a
    wrongful death action in the Wayne Circuit Court against
    defendants, Sharlyn M. Kuzilla, also known as Sharlyn M.
    Lyons, and Bradford G. Capper, D.O. Plaintiff alleged that
    defendant Kuzilla negligently caused the death of plaintiff's
    decedent in an automobile crash. Defendant Dr. Capper owned
    the automobile driven by defendant Kuzilla. On August 30,
    1983, plaintiff filed a motion for leave to amend to add several
    new tort theories and allegations of damages including a medi-
    cal malpractice count against Dr. Capper in regard to his
    prescribing of controlled substances to defendant Kuzilla. Oral
    argument on plaintiff's motion was heard on September 9,
    1983, before the Honorable Paul S. Teranes, who was sitting as
    a substitute because the judge who had been assigned to the
    case for pretrial matters was unavailable. The arguments were
    limited to adding only the medical malpractice count because
    the period of limitations on that count was about to run. After

REFERENCES FOR POINTS IN HEADNOTES

[1] 61A Am Jur 2d, Pleading § 309 et seq.
    62 Am Jur 2d, Pretrial Conference and Procedure § 26.
[2, 5] 5 Am Jur 2d, Appeal and Error § 878.
    61A Am Jur 2d, Pleading §§ 310, 314.
[3, 4, 6] 61A Am Jur 2d, Pleading § 311.
[4] 61A Am Jur 2d, Pleading § 315.
[7] 61A Am Jur 2d, Pleading § 312.
[8, 9] 57 Am Jur 2d, Negligence § 34.
[9] 57 Am Jur 2d, Negligence § 66.
[10, 11] 57 Am Jur 2d, Negligence § 37.
[11] 61 Am Jur 2d, Physicians and Surgeons § 228.
[12] 61 Am Jur 2d, Physicians and Surgeons §§ 311, 313.
    What constitutes physician-patient relationship for malpractice
    purposes. 17 ALR4th 132.
[13] 61 Am Jur 2d, Physicians and Surgeons § 205 et seq.
    Modern status of "locality rule" in malpractice action against
    physician who is not a specialist. 99 ALR3d 1133.

determining that the plaintiff could file a separate malpractice action, the trial court found that prejudice would result to the defendant doctor and denied plaintiff's motion to amend the complaint in regard to the malpractice count. In a subsequent order, the trial court granted plaintiff's motion for leave to amend the complaint to add new tort theories and allegations of damages not included in the malpractice count. However, the trial court denied plaintiff's motion to consolidate the separate medical malpractice action, which he had filed on September 9, 1983, with the present action. Plaintiff appeals from the trial court's order denying his motion for leave to amend his complaint to add the medical malpractice count against Dr. Capper.
*Held:*

The trial court did not abuse its discretion by denying the motion for leave to amend to add the medical malpractice count because prejudice to the defendant doctor was possible. Nevertheless, the Court of Appeals noted that it reached such a determination only given the special circumstances of this case, *i.e.,* that the trial court compromised the interests of both parties by denying the motion but facilitated plaintiff's filing of the separate medical malpractice action in a timely manner. By ruling in this manner, the trial court furthered the spirit of GCR 1963, 118.1, not by granting the motion for leave to amend, but by helping plaintiff preserve the cause of action he desired to add to the complaint. Thus, neither plaintiff nor defendant Dr. Capper were ultimately prejudiced.

Affirmed.

BRONSON, J., dissented.

1. He noted his belief that the fact that there is little time left for discovery is not sufficient reason in and of itself to deny amendment and that this is particularly true where it is possible to extend discovery. He noted that while the Court of Appeals has upheld the denial of a motion to amend on the ground that there is insufficient opportunity for the opposing party to obtain discovery, it has done so only under the extreme circumstances where trial is imminent and prior discovery completed in the case will contribute nothing to discovery on the claim sought to be added by amendment. It is his belief that such is not true of the case at bar. He would hold that, in the absence of any actual prejudice to defendant, the trial court must allow plaintiff leave to amend his complaint.

2. He would hold that Dr. Capper owed a duty to plaintiff's decedent, an innocent driver within the scope of foreseeable risk, by virtue of his special relationship with Sharlyn Kuzilla.

3. He would hold that, for reasons of logical consistency and

public policy, plaintiff's claim is properly considered as one sounding in medical malpractice.

4. While noting his intent not to make physicians highway accident insurers, he stated that liability is properly imposed where a doctor's malpractice is the proximate cause of a plaintiff's injuries.

He would reverse the trial court's denial of plaintiff's motion to amend and instruct the court to extend the time of discovery to accommodate the amendment and eliminate any possible prejudice to Dr. Capper.

OPINION OF THE COURT

1. PRETRIAL PROCEDURE — PLEADING — AMENDMENT OF PLEADINGS — COURT RULES.

A general court rule permits a party to amend his pleading by leave of the court; leave to amend shall be freely given when justice so requires (GCR 1963, 118.1).

2. PRETRIAL PROCEDURE — PLEADING — AMENDMENT OF PLEADINGS.

The decision to grant or deny leave to amend the pleadings is within the discretion of the trial court and the decision will not be reversed absent an abuse of discretion; such discretion is not unlimited and the motion should be granted absent undue delay, bad faith, a dilatory motive or when an amendment would be futile; mere lateness in moving to amend is an insufficient reason to deny the motion, absent unfair prejudice to the opposing party.

3. PRETRIAL PROCEDURE — PLEADING — AMENDMENT OF PLEADINGS — COURT RULES.

The language in a court rule regarding the amendment of pleadings that "leave shall be freely given when justice so requires" imposes a limitation on the discretion of the court necessitating a finding that justice would not be served by an amendment to the pleadings; the allowance of an amendment is not an act of grace, but a right of a litigant who can show that amendment will not work an injustice on the opposing party (GCR 1963, 118.1).

DISSENT BY BRONSON, J.

4. PRETRIAL PROCEDURE — PLEADING — AMENDMENT OF PLEADINGS — COURT RULES.

*Amendment of pleadings should be granted as a matter of right absent some specific finding of injustice to the opposing party; the fact that there is little time left for discovery is not*

*sufficient reason in and of itself to deny amendment and this is particularly true where it is possible to extend discovery (GCR 1963, 118.1).*

5. APPEAL — PRETRIAL PROCEDURE — PLEADING — AMENDMENT OF PLEADINGS — DISCOVERY.

*The Court of Appeals has upheld the denial of a motion to amend on the ground that there is insufficient opportunity for the opposing party to obtain discovery only under the extreme circumstances where trial is imminent and prior discovery completed in the case will contribute nothing to discovery on the claim sought to be added by amendment.*

6. PRETRIAL PROCEDURE — PLEADING — AMENDMENT OF PLEADINGS — COURT RULES.

*A trial court must allow a plaintiff leave to amend his complaint in the absence of any actual prejudice to the defendant (GCR 1963, 118.1).*

7. PRETRIAL PROCEDURE — PLEADING — AMENDMENT OF PLEADINGS — FUTILITY.

*Futility is a recognized reason to deny leave to amend the pleadings only if the complaint is legally insufficient on its face.*

8. NEGLIGENCE — DUTY.

*The question of whether a duty exists in a negligence action is one of law for the court's resolution, whether for medical malpractice or any other personal injury action based upon negligence.*

9. NEGLIGENCE — DUTY.

*"Duty" in an action for negligence comprehends whether the defendant is under any obligation to the plaintiff to avoid negligent conduct; it does not include, where there is an obligation, the nature of the obligation and the standard of care.*

10. NEGLIGENCE — THIRD PARTIES — DUTY.

*There is generally no duty to control the conduct of a third person to prevent him or her from causing harm to another absent a special relationship between the actor and the third person which imposes a duty upon the actor to control the third person's conduct.*

11. NEGLIGENCE — MEDICAL MALPRACTICE — DUTY — THIRD PARTIES.

*A defendant doctor may be found to have owed a duty to the plaintiff's decedent, an innocent driver who was within the scope of foreseeable risk resulting from the doctor's treatment of a patient, where there is a special relationship between the*

*doctor and patient sufficient to place the case within the exception to the common-law rule that no one has a duty to protect an individual who is endangered by the conduct of another.*

12. Negligence — Medical Malpractice — Third Parties.

    *A plaintiff's claim may properly be considered as one sounding in medical malpractice where, in order for the plaintiff to prove his claim against the defendant doctor under either a negligence or a malpractice theory, it is necessary for the plaintiff to demonstrate: (1) the existence of a physician-patient relationship between the defendant doctor and the third person who was a cause in fact of the plaintiff's injury; (2) the breach of the applicable standard of care required by the doctor in the treatment of his or her patient; and (3) that the negligent treatment of the patient was a proximate cause of the plaintiff's injury.*

13. Negligence — Medical Malpractice — Standard of Care — Evidence.

    *The applicable standard of care required by a doctor in the treatment of his or her patient requires the doctor to exercise that degree of skill, care and diligence exercised by members of the same profession, practicing in the same or a similar locality, in light of the present state of medical science; in Michigan, the testimony of experts is required to establish that a doctor has breached the standard of care required.*

*Chambers, Steiner, Mazur, Ornstein & Amlin, P.C.* (by *Courtney E. Morgan, Jr.,* and *Angela J. Nicita),* for plaintiff.

*Highland & Currier, P.C.* (by *John N. Highland),* for Bradford G. Capper, D.O.

Before: Hood, P.J., and Bronson and R. L. Tahvonen,* JJ.

Hood, P.J. Plaintiff appeals as of right from the trial court's order denying his motion for leave to amend his complaint to add a medical malpractice count against defendant Dr. Bradford G. Capper.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

On October 13, 1981, plaintiff filed this wrongful death action against defendant Sharlyn Kuzilla alleging that she negligently caused the death of plaintiff's decedent and wife Judith Welke in an automobile crash occurring September 11, 1981. Defendant Dr. Capper owned the automobile driven by defendant Kuzilla. On August 30, 1983, plaintiff filed a motion for leave to amend to add several new tort theories and allegations of damages including a medical malpractice count against Dr. Capper.

In his proposed amended complaint regarding the medical malpractice count, plaintiff alleged that Dr. Capper was defendant Kuzilla's treating physician prior to the accident. As such, Dr. Capper allegedly had a duty to protect the public and, in particular, plaintiff's decedent from any imminent foreseeable danger posed by defendant Kuzilla. Dr. Capper allegedly breached this duty by prescribing many controlled substances to defendant Kuzilla without warning her of the drugs' effects on her driving ability and by allowing her to drive his motor vehicle while she was under the influence of the drugs.

On September 9, 1983, the trial court heard arguments regarding the motion to amend the complaint limited to adding only the medical malpractice count because the period of limitations on that action was about to run. Defendant's argument that amending to add a medical malpractice count a few months short of the discovery cut-off date (WCCR 301.3[c]) and so soon before mediation and trial would prejudice defendant convinced the court to deny the motion. Nevertheless, the trial court did not deny the motion to amend the complaint to add the medical malpractice count until it ascertained that plaintiff could still timely file a separate medical malpractice action against Dr.

Capper. The trial court made arrangements for plaintiff to file the complaint on the date of hearing despite the fact that the clerk's office was officially closed. Plaintiff did file the separate action on September 9, 1983.

In a subsequent order, the trial court granted plaintiff's remaining motion for leave to amend the complaint. However, the trial court denied plaintiff's motion to consolidate the medical malpractice action with this case. On March 15, 1984, the trial court ordered defendant's motion for summary judgment in the medical malpractice action granted stating that plaintiff failed to state a claim, GCR 1963, 117.2(1), because this state does not recognize a third-party cause of action based upon a physician-patient relationship. Plaintiff also filed a separate claim of appeal from that order. (Docket No. 77810).

Plaintiff argues in this appeal that the trial court abused its discretion by denying his motion for leave to amend the complaint to add a medical malpractice count. Plaintiff argues that the little time left for discovery was not a sufficient reason alone to find the necessary prejudice to defendant to deny the motion. Plaintiff argues that defendant was already fully aware of the facts underlying the action.

Defendant argues that the trial court did not abuse its discretion because adding a medical malpractice claim would require Dr. Capper's medical malpractice insurer to become involved and, most certainly, new counsel. Trial would have to be delayed to allow additional discovery, particularly deposition of expert witnesses. The original complaint did not act as notice to Dr. Capper's malpractice carrier that it would need to prepare a defense despite the commonality of underlying facts. Defendant also argues, even though the trial

court did not decide the motion for this reason, that plaintiff's amendment would have been futile.

GCR 1963, 118.1 permits a party to amend its pleading by leave of court which "shall be freely given when justice so requires". While the decision to grant or deny leave is within the discretion of the trial court, the decision will not be reversed absent an abuse of discretion. *McCalla v Ellis*, 129 Mich App 452, 457; 341 NW2d 525 (1983). This discretion is not unlimited.

" 'This language [that "leave shall be freely given when justice so requires"] imposes a limitation on the discretion of the court necessitating a finding that justice would not be served by an amendment to pleadings. The allowance of an amendment is not an act of grace, but a right of a litigant who can show that an amendment will not work an injustice on the opposing party.' *Midura v Lincoln Consolidated Schools*, 111 Mich App 558, 563; 314 NW2d 691 (1981)." *McCalla, supra*, p 457.

Such a motion should be granted absent undue delay, bad faith, a dilatory motive or when an amendment would be futile. *Meyer v Hubbell*, 117 Mich App 699, 705-706; 324 NW2d 139 (1982). Mere lateness in moving to amend is an insufficent reason to deny the motion, absent unfair prejudice to the opposing party. *Rubino v Sterling Heights*, 94 Mich App 494, 499-500; 290 NW2d 43 (1979).

In this case, the trial court was faced with an uncomfortable dilemma. Although plaintiff's motion to amend came late in the proceedings, a few months of discovery time was still available to defendant. However, the trial court recognized that adding a medical malpractice count was adding an entirely different theory of which defendant would not previously have had notice and, therefore, time to prepare. Defendant's medical mal-

practice insurer would need to be notified and new counsel would probably be retained. Discovery would undoubtedly need to be extended by order. Even though plaintiff stated that he was willing to agree to an extension of discovery, the trial court could not guarantee that the Chief Judge of the Wayne County Circuit Court would grant such an extension. See WCCR 301.3(g)(1).

We find that because prejudice to defendant was possible, the trial court did not abuse its discretion by denying the motion for leave to amend to add the medical malpractice count. Nevertheless, we do so *only* given the special circumstances of this case, *i.e.,* that the trial court compromised the interests of both parties by denying the motion but facilitated plaintiff's filing of the medical malpractice action in a timely manner. By ruling in this manner, the trial court furthered the spirit of GCR 1963, 118.1, not by granting the motion for leave to amend, but by helping plaintiff preserve the cause of action he desired to add to the complaint. Thus, neither plaintiff nor defendant were ultimately prejudiced.

Because we affirm on the grounds given by the trial court, we need not address defendant's argument that, alternatively, the trial court could have denied plaintiff's motion because his medical malpractice claim would have been futile. We do, however, refer defendant to this Court's recent decision in *Duvall v Goldin,* 139 Mich App 342; 362 NW2d 275 (1984).

Affirmed.

R. L. Tahvonen, J., concurred.

Bronson, J. *(dissenting).* Plaintiff appeals from an order denying his motion for leave to amend his complaint to add a claim of medical malprac-

tice against the defendant doctor. The majority
holds that, due to possible prejudice to defendant,
the motion to amend was properly denied. I cannot
agree with the majority's determination, and,
therefore, I respectfully dissent for the reasons
stated herein.

On October 13, 1981, plaintiff, Robert J. Welke,
filed this action as the personal representative of
his wife's estate. The initial complaint alleged that
the decedent, Judith Welke, was killed due to
injuries sustained when a vehicle owned by defen-
dant Bradford Capper, D.O., and driven by defen-
dant Sharlyn Kuzilla crossed the center line re-
sulting in a head-on collision with the vehicle
operated by the decedent. Defendant Kuzilla is not
a party to this appeal.

On November 5, 1982, a substitution of attor-
neys was filed and plaintiff's current counsel made
their appearance. On December 1, 1982, the first
deposition was taken in this matter, that of the
defendant driver.

On January 26, 1983, the deposition of defen-
dant Dr. Capper was partially taken, but has not
yet been completed. On May 11, 1983, the deposi-
tion of the investigating police officer was taken.
The husband of the defendant driver was deposed
on June 30, 1983.

During the course of these discovery depositions
there was testimony that defendant Dr. Capper
had prescribed several drugs for defendant Kuzilla
over a period of several months prior to the fatal
accident. These drugs included pain pills, muscle
relaxants, diet pills and Valium.

There was also testimony that on the evening
prior to the accident in question, defendant Dr.
Capper injected defendant Kuzilla with some sub-
stance and perhaps dispensed other drugs to her.

On August 30, 1983, plaintiff filed a motion for

leave to amend his complaint. In his proposed amended complaint, plaintiff sought to add a malpractice claim against Dr. Capper. The proposed amended complaint alleged that defendant Capper breached the standard of care for his profession by prescribing controlled substances for other than lawful medical purposes, by failing to warn his patient of the dangers of operating a vehicle while under the influence of controlled substances, by allowing his patient, defendant Kuzilla, to operate a motor vehicle when he knew that she was under the influence of controlled substances, and by placing his patient in a position which threatened the health and safety of the public.

Oral argument on plaintiff's motion was heard on September 9, 1983, before the Honorable Paul S. Teranes of the Wayne County Circuit Court. Judge Teranes was sitting as a substitute because the judge who had been assigned to the case for pretrial matters was unavailable. Plaintiff's motion to amend was denied because the lower court felt that the amendment was sought too late. Discovery was to be cut off on December 13, 1983, and the court felt that this would not permit sufficient time for defendant Capper to conduct discovery on the malpractice claim.

When his motion to amend was denied, plaintiff filed a new action against defendant Capper on September 9, 1983. This second complaint included a malpractice claim. On September 27, 1983, plaintiff filed a motion to consolidate the September, 1983, action with the instant case. This motion was denied without prejudice on November 18, 1983. Defendant then filed a motion for summary judgment in the September, 1983, action arguing that plaintiff's malpractice action failed to state a claim upon which relief could be granted. Defendant's motion was granted in March, 1984. In

December, 1983, defendant Kuzilla filed a separate malpractice action against defendant Capper, seeking, *inter alia,* damages for emotional distress caused her by the death of Mrs. Welke, and blaming the fatal crash on the fact that Dr. Capper gave her illicit substances causing her to lose control of the vehicle. The instant appeal, however, involves only Judge Teranes' denial of plaintiff's motion to amend his original complaint to include a count of malpractice against Dr. Capper.

## I

Plaintiff contends that the trial court abused its discretion in denying his motion to amend his complaint. The decision to grant or deny an amendment is one within the discretion of the trial court. *Rubino v Sterling Heights,* 94 Mich App 494; 290 NW2d 43 (1979); *McCalla v Ellis,* 129 Mich App 452; 341 NW2d 525 (1983). Due to the mandate of GCR 1963, 118.1, however, the trial judge's discretion to grant or deny leave to amend pleadings is not unlimited. *Ben P Fyke & Sons v Gunter Co,* 390 Mich 649, 656-657; 213 NW2d 134 (1973); *Rubino, supra,* p 499; *Midura v Lincoln Consolidated Schools,* 111 Mich App 558, 562-563; 314 NW2d 691 (1981); *McCalla, supra,* p 457. As this Court explained in *Midura, supra,* pp 562-563:

"The discretion invested in trial judges under the standard 'leave shall be freely given when justice so requires' is not boundless. This language imposes a limitation on the discretion of the court necessitating a finding that justice would not be served by an amendment to pleadings. The allowance of an amendment is not an act of grace, but a right of a litigant who can show that an amendment will not work an injustice on the opposing party. *Fyke & Sons, supra,* 659."

Absent some specific finding of injustice to the

opposing party, amendment should be granted as a matter of right.

In *Fyke & Sons, supra,* the Michigan Supreme Court indicated several factors which should be examined by a judge in determining whether an injustice would result if amendment was granted. *Id.,* p 656. In *Fyke,* the Court made clear that a delay in seeking amendment, without a finding of bad faith or actual prejudice caused by delay, will not justify denial of a motion to amend. *Id.,* pp 663-664.

The trial court in this case denied plaintiff's motion to amend because it believed that plaintiff sought to amend his complaint "too late". The judge was concerned that the defendant doctor would have insufficient time to complete necessary discovery on the malpractice claim within the three months remaining prior to the cut-off date for discovery. From the record, this appears to have been the trial court's only reason for denying the motion to amend.

The fact that there is little time left for discovery is not sufficient reason in and of itself to deny amendment. This is particularly true where it is possible to extend discovery. *Rubino, supra,* p 500.

"Mere lateness in moving to amend is an insufficient reason to deny the motion, absent unfair prejudice to the opposing party. *Spartan Asphalt Paving Co v Grand Ledge Mobile Home Park,* 71 Mich App 177; 247 NW2d 589 (1976). In the instant case, defendant is not prejudiced by the addition to the complaint of the counts of nuisance and breach of contract. Discovery is not precluded merely because a pretrial conference has occurred. GCR 1963, 301.7 permits the court to order subsequent discovery 'on written notice for good cause shown'. Nor does sufficient prejudice exist because the added counts involve complex legal and factual issues." *Id.,* p 500.

Plaintiff's counsel agreed to an extension of the discovery period to permit defendant Capper the opportunity to do any necessary discovery and obtain any necessary expert witnesses, thereby eliminating any possible prejudice to defendant resulting from the amendment. Further, at the time of the hearing on plaintiff's motion to amend, there were still seven months remaining before trial.

While this Court has upheld the denial of a motion to amend on the ground that there is insufficient opportunity for the opposing party to obtain discovery, it has done so only under the extreme circumstances where trial is imminent and prior discovery completed in the case will contribute nothing to discovery on the claim sought to be added by amendment. *Messer v Floyd Rice Ford, Inc,* 91 Mich App 644, 649-650; 284 NW2d 139 (1979), *rev'd on other grounds* 407 Mich 962; 288 NW2d 352 (1980). Such is not true of the case at bar. The trial court failed to make any inquiry into the discovery which had been conducted in the case. However, the factual circumstances which have been the subject of discovery thus far are the same factual circumstances which underlie the proposed malpractice claim.

The result of the trial court's decision to deny amendment is that plaintiff filed a second action, thus placing two cases on the court's docket involving substantially the same factual circumstances. An additional set of discovery proceedings, mediation and trial were added to the trial court's already crowded docket when discovery in the original action could have simply been extended to accommodate the new claim.

In the absence of any actual prejudice to defendant, the trial court must allow plaintiff leave to amend his complaint. I would therefore instruct

the trial court to allow the amendment, extending
the time of discovery to accommodate the amend-
ment and eliminate any possible prejudice to de-
fendant. *Rubino, supra.*

## II

Defendant contends that, even absent prejudice,
the motion to amend was properly denied because
amendment would have been futile. Futility is a
recognized reason to deny leave to amend only if
the complaint is "legally insufficient on its face".
*Fyke & Sons, supra,* p 660. Defendant alleges that
a cause of action in malpractice cannot exist in the
case at bar because there is no physician-patient
relationship between the plaintiff's decedent and
defendant doctor. Defendant argues that, in the
absence of a doctor-patient relationship, there was
no duty owed to plaintiff's decedent and such an
action will not lie. While it is undisputed that
plaintiff's decedent and Dr. Capper were not in a
direct patient-physician relationship, neither is it
disputed that Dr. Capper and Sharlyn Kuzilla did
have such a relationship.

In a negligence action, whether for medical
malpractice or any other personal injury action
based upon negligence, the question of whether a
duty exists is one of law for the court's resolution.
*Elbert v Saginaw,* 363 Mich 463; 109 NW2d 879
(1961); 57 Am Jur 2d, Negligence, § 34, p 381.

"Duty" comprehends whether the defendant is
under any obligation to the plaintiff to avoid negli-
gent conduct. It does not include, where there is
an obligation, the nature of the obligation and the
standard of care. *Moning v Alfono,* 400 Mich 425,
437; 254 NW2d 759 (1977).

"It is better to reserve 'duty' for the problem of the

relation between individuals which imposes upon one a legal obligation for the benefit of the other, and to deal with particular conduct in terms of a legal standard of what is required to meet the obligation. In other words, 'duty' is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff; and in negligence cases, the duty is always the same, to conform to the legal standard of reasonable conduct in the light of the apparent risk. What the defendant must do, or must not do, is a question of the standard of conduct required to satisfy the duty. The distinction is one of convenience only, and it must be remembered that the two are correlative, and one cannot exist without the other." Prosser, Torts (4th ed), § 53, p 324.

Generally, there is no duty to control the conduct of a third person to prevent him or her from causing harm to another absent a special relationship between the actor and the third person which imposes a duty upon the actor to control the third person's conduct. 2 Restatement Torts, 2d, § 315(a), p 122; *Davis v Lhim,* 124 Mich App 291, 299; 335 NW2d 481 (1983).

In the effort to resolve the question of whether the defendant doctor owed a duty of care to plaintiff's decedent, we are guided by decisions of this state and decisions from other jurisdictions which have considered the issue of liability to a third party. Courts in Michigan have recognized under a variety of factual circumstances that a third party may have a claim grounded in negligence against a defendant based upon the defendant's relationship with another party. See, *e.g., Moning, supra* (manufacturer, wholesaler, and retailer of manufactured product owe a legal obligation of due care to a bystander affected by the use of the product); *Clark v Dalman,* 379 Mich 251; 150 NW2d 755 (1967) (general contractor owed a duty in general not to endanger employees of the subcontractor or inspectors or anyone else lawfully on the project

site); *Davis, supra* (psychiatrist owes a duty of reasonable care to persons who are readily identifiable as foreseeably endangered by his patient); *Romeo v Van Otterloo,* 117 Mich App 333; 323 NW2d 693 (1982) (employer may owe duty to third party to supervise the activity of his employee); *Duvall v Goldin,* 139 Mich App 342; 362 NW2d 275 (1984) (doctor owed duty of reasonable care to protect the driving public where doctor's negligence in diagnosis or treatment of patient contributes to plaintiff's injuries). *Contra,* see, *Friedman v Dozorc,* 412 Mich 1; 312 NW2d 585 (1981) (attorney owes no duty of care to an adverse party in litigation).

In *Davis, supra,* p 305, relying on *Tarasoff v Regents of University of California,* 17 Cal 3d 425; 131 Cal Rptr 14; 551 P2d 334 (1976), this Court held that a psychiatrist does owe a professional duty of care to those who could foreseeably be injured by his patient.

"[W]hen a psychiatrist determines or, pursuant to the standard of care of his profession, should determine that his patient poses a serious danger of violence to a readily identifiable person, the psychiatrist has a duty to use reasonable care to protect that individual against such danger."

This Court's imposition of a duty on psychiatrists in *Davis, supra,* was based upon the physician-patient relationship and general tort law principles.

"Under the common law, no one owes any duty to protect an individual who is endangered by a third person *unless* he has *some special relationship* with either the dangerous person or the potential victim. *Tarasoff, supra,* p 435. See, *e.g., American States Ins Co v Albin,* 118 Mich App 201, 206; 324 NW2d 574 (1982).

*The California court found that a psychiatrist has such a 'special relationship' to his patient.* Consequently, the court held that, under certain circumstances, a psychiatrist owes a duty to use reasonable care to protect persons endangered by his patient.

"Michigan case law supports the *Tarasoff* holding. 'Duty' is one of six elements of an action for negligence. *Moning v Alfono,* 400 Mich 425, 437; 254 NW2d 759 (1977). Moreover, 'in negligence cases, the duty is always the same, to conform to the legal standard of reasonable conduct in light of the apparent risk'. Prosser, Torts (4th ed), § 53, p 324, cited in *Moning v Alfono, supra,* p 437." *Davis, supra,* pp 299-300. (Emphasis added.)

Although *Tarasoff* did not expressly limit the scope of duty to identifiable victims, *Davis* stated that the duty of the psychiatrist is limited to only those persons readily identifiable as foreseeably endangered. *Davis,* p 303. The Court noted that, under Michigan law, once a duty is imposed, that duty is owed to any person within the scope of foreseeable risk. In the case of a psychiatrist's duty to persons endangered by his or her patient, however, the Court held that a narrower scope of duty was required for reasons of public policy. *Id.,* p 304.

In *Duvall,* this Court recently extended *Davis* to uphold a negligence claim against a physician based upon allegations similar to those presented in the instant case. The Court reasoned that while *Davis* was factually limited to readily identifiable persons, *Davis* does not preclude recognizing a "special relationship" between the doctor and patient, and therefore the imposition of a duty in a broader context. See, 2 Restatement Torts, 2d, § 315, p 122. The Court, therefore, held that:

"[D]efendant did in fact have a special relationship with his patient, the so-called 'dangerous person', which

we believe is sufficient to place this case within the exception to the common-law rule that no one has a duty to protect an individual who is endangered by the conduct of another. Where the actor stands in a special relationship with *either* the third-party victim or the person causing the injury, a duty of reasonable care may arise." *Duvall, supra,* pp 350–351. (Emphasis in original.)

Implicit in *Duvall* is a recognition that *Davis* fashioned an exception to the general foreseeability rule in holding that a psychiatrist only has a duty to readily identifiable persons threatened by his or her patient.

*Duvall* is in accord with the opinions of courts in other jurisdictions which have examined this issue. *Davis v Mangelsdorf,* 138 Ariz 207; 673 P2d 951 (Ariz App, 1983); *Gooden v Tips,* 651 SW2d 364 (Tex App, 1983); *Wharton Transport Corp v Bridges,* 606 SW2d 521 (Tenn, 1980); *Watkins v United States,* 589 F2d 214 (CA 5, 1979); *Freese v Lemmon,* 210 NW2d 576 (Iowa, 1973); *Kaiser v Suburban Transportation System,* 65 Wash 2d 461; 398 P2d 14 (1965).

I would hold, therefore, that defendant Dr. Capper owed a duty to plaintiff's decedent, an innocent driver within the scope of foreseeable risk, by virtue of his special relationship with Sharlyn Kuzilla.

### III

Having found that defendant owed a duty to plaintiff's decedent, it is necessary to return to defendant's original argument that a doctor owes no duty and that an action for malpractice cannot stand in the absence of a physician-patient relationship. In *Duvall, supra,* p 358, the Court circumvented this issue by finding that plaintiff's action was not founded upon medical malpractice. The

Court did, however, find a duty based upon general principles of negligence law. Of the cases from other jurisdictions which have addressed this issue, only two courts addressed the duty issue directly. *Gooden v Tips, supra; Davis v Mangelsdorf, supra.* The remaining courts dealt with this issue in terms of foreseeability of the injury and proximate causation, *Watkins v United States, supra,* or merely assumed the existence of a duty owed. *Wharton Transport Corp v Bridges, supra; Kaiser v Suburban Transportation System, supra; Freese v Lemmon, supra.* Although each court recognized, either explicitly or implicitly, that the doctor owed a duty to the plaintiff, no court to my knowledge has directly addressed the issue of whether a case such as the one at bar may sound in malpractice in the absence of a direct physician-patient relationship between the defendant doctor and the plaintiff's decedent. I would hold that, for reasons of logical consistency and public policy, plaintiff's claim is properly considered as one sounding in medical malpractice.

To hold, as defendant urges, that plaintiff's proposed amendment is futile because it alleges malpractice as opposed to negligence, would be to elevate form over substance. In order for plaintiff to prove his claim against defendant, whether under negligence or malpractice, it is necessary for plaintiff to demonstrate: 1) the existence of a physician-patient relationship between defendant doctor and the third person who was a cause-in-fact of plaintiff's injury; 2) the breach of the applicable standard of care required by the doctor in the treatment of his or her patient. The applicable standard of care requires the physician to exercise that degree of skill, care and diligence exercised by members of the same profession, practicing in the same or a similar locality, in light of the present

state of medical science. *Kambas v St Joseph's Mercy Hospital of Detroit, Michigan,* 389 Mich 249, 254-255; 205 NW2d 431 (1973). *Duvall, supra,* pp 350–352; *Kaiser, supra,* p 464; *Watkins, supra,* p 217; *Gooden, supra,* pp 369-370; see generally, *Wharton Transport Corp, supra,* pp 526-527; *Freese, supra* p. 579. In Michigan, the testimony of experts is required to establish that a doctor has breached the standard of care required. *Marchlewicz v Stanton,* 50 Mich App 344, 347; 213 NW2d 317 (1973); and 3) that the negligent treatment of the patient was a proximate cause of plaintiff's injury. *Duvall, supra,* p 352; *Gooden, supra,* pp 369-370; *Watkins, supra,* p 219.

It is clear that a prerequisite to plaintiff's claim is the proving of malpractice in the doctor's treatment of his or her patient. Without demonstrating malpractice in the doctor-patient relationship, plaintiff will not be able to show proximate causation. Thus, although plaintiff's decedent and the defendant doctor are not in a direct doctor-patient relationship, the necessity of plaintiff's proving that the doctor's malpractice was a proximate cause of plaintiff's decedent's injury requires us to treat plaintiff's claim as one sounding in malpractice.

Defendant relies on *Rogers v Horvath,* 65 Mich App 644; 237 NW2d 595 (1975), in arguing that there is no duty owed to plaintiff's decedent in the absence of a patient-physician relationship. In *Rogers,* plaintiff was examined by the defendant doctor in preparation for the doctor's testimony before a workers' compensation referee. Subsequent to the examination, the doctor testified that plaintiff was not injured and was a malingerer. This Court upheld the dismissal of plaintiff's malpractice claim, holding:

"The examination of plaintiff was performed on behalf of her employer in preparation for testifying before the workmen's compensation referee, and it was not performed for the plaintiff's benefit to diagnose or treat an ailment. The trial court was correct in ruling that plaintiff had no cause of action for malpractice.

"The term 'malpractice' denotes a breach of the duty owed by one in rendering professional services to a person who has contracted for such services; in physician-malpractice cases, the duty owed by the physician arises from the physician-patient relationship. No such relationship existed in the case at bar. Defendant was employed by General Motors to examine one of its employees in preparation for a workmen's compensation hearing. Plaintiff did not employ the defendant, nor did she seek or receive medical advice or treatment. Under such circumstances, the defendant did not owe plaintiff any duty arising from a physician-patient relationship. This is not to say that a physician who examines a person for reasons other than diagnosis or treatment and for the benefit of some one other than the examinee owes no duty of due care to that person. Rather, we hold that the physician in such a case does not owe such a duty of care as will subject him to liability for malpractice." (Footnotes omitted.) *Rogers, supra,* pp 646-647.

Of critical importance to our holding in *Rogers* was our finding that plaintiff's claim did not rest upon a patient-physician relationship, either directly or, as in the instant case, derivatively and as a prerequisite to plaintiff's claim. Unlike *Rogers,* however, the instant case requires a finding of malpractice in a direct physician-patient relationship between the defendant doctor and the injured patient.

Of further importance to my holding are the policy concerns regarding the imposition of liability on doctors in a case such as the one at bar. As stated in *Duvall, supra,* we do not intend to make physicians highway accident insurers. I do believe,

however, that liability is properly imposed where a doctor's malpractice is the proximate cause of a plaintiff's injuries. An important consideration in the willingness of courts to impose malpractice liability on doctors is the ability of the defendants to pass on to the general public, through malpractice insurance and individual billings, the inevitable damages resulting from their activities, or at least to distribute them over a relatively large group. See, Prosser, *Palsgraf Revisited*, 52 Mich L Rev 1, 30-32 (1953). In the typical malpractice action, the doctor is able to insure against the risk of liability through the required malpractice insurance. By characterizing the instant action as one in malpractice, the risk of liability now imposed upon the defendant is already insured against through his malpractice insurance in effect. It would be anomalous to impose liability on a doctor for injuries arising out of his treatment of a patient, and to require the doctor to insure against this risk of liability separately and distinctly from the risk imposed under traditional malpractice actions.

I would reverse the trial court's denial of plaintiff's motion to amend and instruct the court to extend the time of discovery to accommodate the amendment and eliminate any possible prejudice to defendant.