WELKE v KUZILLA

Docket No. 77810. Submitted February 11, 1985, at Detroit.—Decided
    July 15, 1985. Leave to appeal applied for.

   Plaintiff, Robert J. Welke, personal representative of the estate of
      Judith L. Welke, deceased, brought a wrongful death action in
      the Wayne Circuit Court against defendants, Sharlyn M. Kuz-
      illa, also known as Sharlyn M. Lyons, and Bradford G. Capper,
      D.O. Plaintiff sought leave to amend his complaint to add a
      malpractice count against Dr. Capper. The trial court denied
      leave to amend in regard to the malpractice allegations and
      plaintiff appealed to the Court of Appeals. The Court of Ap-
      peals affirmed. 140 Mich App 658 (1985). In this companion
      case, plaintiff brought a separate action in the Wayne Circuit
      Court against the defendants in which a malpractice count
      against Dr. Capper was alleged. Defendant Sharlyn M. Kuzilla
      was dismissed from the action. Dr. Capper thereafter brought a
      motion for a partial summary judgment contending that the
      medical malpractice count did not state a claim upon which
      relief could be granted. The trial court, Michael J. Connor, J.,
      granted the defendant's motion, finding that the lack of a
      physician-patient relationship between plaintiff and Dr. Capper
      precluded a finding that Dr. Capper was liable to the plaintiff
      on a medical malpractice theory. Plaintiff appeals from the
      order granting the partial summary judgment. *Held:*

      1. Plaintiff's medical malpractice complaint is legally suffi-
   cient.

      2. Dr. Capper owed a duty to plaintiff's decedent, an innocent
   driver within the scope of foreseeable risk, by virtue of his
   special relationship with his patient, Sharlyn Kuzilla. This duty
   is sufficient to sustain a medical malpractice action.

      3. Plaintiff's claim is one properly sounding in medical mal-
   practice.

      4. The threshold question of whether a duty is owed to

REFERENCES FOR POINTS IN HEADNOTES
[1-8] Am Jur 2d, Negligence § 32 *et seq.*
   Am Jur 2d, Physicians, Surgeons, and Other Healers § 200 *et seq.*
   See the annotation in the ALR3d/4th Quick Index under Malprac-
      tice.

plaintiff by Dr. Capper is a question of law for the court's resolution.

5. The possible imposition of liability in a case such as the case at bar comports with public policy concerns. Liability is properly imposed where a doctor's malpractice is the proximate cause of a plaintiff's injuries and where the doctor himself is in the best position to prevent the harm.

Reversed.

R. M. Daniels, J., dissented. After stating that medical malpractice consitutues the negligent performance by a physician or surgeon of the duties devolved and incumbent upon him on account of his contractual relations with his patient, he noted his belief that the majority was extending this duty to persons not involved in the physician-patient contractual relationship. He disagrees with the idea that a physician may be liable for his alleged medical malpractice to an unidentified third person who might be injured by a patient's conduct resulting from the physician's treatment of the patient. He would affirm.

### Opinion of the Court

1. Negligence — Medical Malpractice — Duty.

The question of whether a duty exists is one of law for the court's resolution in a medical malpractice action or any personal injury action based upon negligence.

2. Negligence — Third Parties — Duty.

An individual generally owes no duty to protect another individual who is endangered by a third person, unless the first individual has some special relationship with either the dangerous person or the potential victim.

3. Negligence — Medical Malpractice — Duty — Third Parties — Physicians and Surgeons.

A defendant doctor may be found to have owed a duty to the plaintiff's decedent, an innocent driver who was within the scope of foreseeable risk resulting from the doctor's treatment of a patient, where there is a special relationship between the doctor and the patient sufficient to place the case within the exception to the common-law rule that no one has a duty to protect an individual who is endangered by the conduct of another; such a duty is sufficient to sustain a medical malpractice action; such a special relationship exists where the physician determines or, pursuant to the standard of care of his profession, should determine that his patient poses a serious threat of danger to a third person.

4. Negligence — Medical Malpractice — Third Parties.

A plaintiff's claim may properly be considered as one sounding in medical malpractice where, in order for the plaintiff to prove his claim against the defendant doctor under either a negligence or a malpractice theory, it is necessary for the plaintiff to demonstrate: (1) the existence of a physician-patient relationship between the defendant doctor and the third person who was a cause-in-fact of the plaintiff's injury; (2) the breach of the applicable standard of care required by the doctor in the treatment of his or her patient; and (3) that the negligent treatment of the patient was a proximate cause of the plaintiff's injury.

5. Negligence — Medical Malpractice.

An action in medical malpractice is in essence a tort claim in negligence.

6. Negligence — Medical Malpractice.

Medical malpractice consitututes the negligent performance by a physician or surgeon of the duties devolved and incumbent upon him on account of his contractual relations with his patient.

Dissent by R. M. Daniels, J.

7. Negligence — Medical Malpractice.

*Medical malpractice constitutes the negligent performance by a physician or surgeon of the duties devolved and incumbent upon him on account of his contractual relations with his patient; the duties of the physician or surgeon should not be extended to persons not involved in the physician-patient contractual relationship.*

8. Negligence — Medical Malpractice — Third Parties.

*A physician may not be found liable for his alleged medical malpractice to an unidentified third person who might be injured by a patient's conduct resulting from the physician's treatment of the patient.*

*Chambers, Steiner, Mazur, Ornstein & Amlin, P.C.* (by *Courtney E. Morgan, Jr.,* and *Angela J. Nicita),* for plaintiff.

*Dice, Sweeney, Sullivan, Feikens, Hurbis & Foster, P.C.* (by *Robert N. Foster* and *Dennis J. Mendis),* for Bradford G. Capper, D.O.

Before: J. H. Gillis, P.J., and Hood and R. M. Daniels,* JJ.

Hood, J. Plaintiff appeals as of right from the grant of defendant Dr. Bradford Capper's motion for partial summary judgment dismissing plaintiff's medical malpractice count for failure to state a claim upon which relief could be granted.

On October 13, 1981, plaintiff filed a wrongful death action against defendant Sharlyn Kuzilla alleging that she negligently caused the death of plaintiff's decedent and wife, Judith Welke. Plaintiff's wife was killed when the automobile Kuzilla was driving, which was owned by defendant Dr. Bradford Capper, crossed the center line and collided with the vehicle operated by decedent. Plaintiff also alleged that prior to the accident, Dr. Capper had been treating Kuzilla and had prescribed medication for her. On the evening prior to the accident, he allegedly injected Kuzilla with an unknown substance.

On August 30, 1983, plaintiff moved for leave to amend his complaint to add several new tort theories and allegations of damages including a medical malpractice count against Dr. Capper. On September 9, 1983, the trial court heard arguments concerning only the request to add the medical malpractice count because the period of limitations on that action was about to run. The trial court denied leave to add the medical malpractice count but granted leave to add the remaining counts.

The trial court reasoned that the medical malpractice count was an entirely different theory for which defendant had no previous notice and no time to prepare. If the count were added, discovery necessarily would have to be extended beyond the impending cut-off date, and the grant of such an

* Circuit judge, sitting on the Court of Appeals by assignment.

extension by the Chief Judge of the Wayne County Circuit Court could not be guaranteed. However, before the trial court denied leave to amend, it made arrangements for plaintiff to file the medical malpractice action on the date of the hearing, despite the fact that the clerk's office was officially closed.

This Court affirmed the trial court's actions, finding that neither plaintiff nor defendant had been prejudiced because the trial court had "compromised the interests of both parties by denying the motion but facilitated plaintiff's filing of the medical malpractice action in a timely manner". *Welke v Kuzilla,* 140 Mich App 658, 666; 365 NW2d 205 (1985). It is this subsequent action · which forms the basis of the instant appeal.

In plaintiff's second action against Dr. Capper, defendant filed a motion for partial summary judgment contending that the medical malpractice count did not state a claim upon which relief could be granted. Defendant argued that because no physician-patient relationship existed between defendant and plaintiff's decedent, there was no duty owed to plaintiff that would support a medical malpractice claim. Plaintiff acknowledged that there was no physician-patient relationship, but asked the court to follow decisions in other jurisdictions which hold the physician responsible for his treatment of patients who cause injuries to third parties. The trial court granted defendant's motion finding that the lack of a physician-patient relationship between plaintiff's decedent and defendant precluded a finding that the defendant was liable to plaintiff on a medical malpractice theory. We reverse the trial court's holding.

In doing so, we note that the question of whether the defendant doctor owed a duty of care to plaintiff was anticipated in the companion case

to this appeal, *Welke v Kuzilla, supra.* Because a majority of this Court affirmed the trial court's decision to deny plaintiff leave to add the medical malpractice count on the grounds given by the trial court, the question was not addressed except by Judge Bronson in his dissent. We agree with Judge Bronson that plaintiff's medical malpractice action is legally sufficient and adopt his reasoning as our own.

In a medical malpractice action, or any personal injury action based upon negligence, the question of whether a duty exists is one of law for the court's resolution. *Elbert v Saginaw,* 363 Mich 463; 109 NW2d 879 (1961); *Welke v Kuzilla, supra* (Bronson, J., *dissenting).* In general, an individual owes no duty to protect another individual who is endangered by a third person, unless the first individual has some special relationship with either the dangerous person or the potential victim. *Davis v Lhim,* 124 Mich App 291, 299; 335 NW2d 481 (1983); 2 Restatement Torts, 2d, § 315(a), p 122. See also *American States Ins Co v Albin,* 118 Mich App 201, 206; 324 NW2d 574 (1982), *lv den* 417 Mich 955 (1983).

As Judge Bronson pointed out, Michigan courts have recognized under various circumstances that a third party may have a negligence claim against a defendant based upon the defendant's relationship with another party. See *Duvall v Goldin,* 139 Mich App 342; 362 NW2d 275 (1984), and cases cited therein. In *Davis v Lhim, supra,* citing *Tarasoff v Regents of University of California,* 17 Cal 3d 425; 131 Cal Rptr 14; 551 P2d 334 (1976), this Court held that a psychiatrist owes a professional duty of care to those who could foreseeably be injured by his patient. The imposition of this duty was based upon the physician-patient relationship and the general principle of tort law precluding an

individual's duty to protect another who is endangered by a third person *unless* he has some special relationship with either the dangerous person or the potential victim. Like the California court in *Tarasoff,* this Court found that a pychiatrist has such a "special relationship" with his patient, which, under certain circumstances, imposes a duty on a psychiatrist to use reasonable care to protect persons endangered by his patient.

The *Davis* Court recognized, however, that in the psychiatric profession, "[a]nnouncing every generalized threat to the outside world would seriously undermine a therapist's efforts to gain the trust of his patient". 124 Mich App 304. Therefore, the Court was compelled to limit the scope of the psychiatrist's duty to use reasonable care to protect an individual against danger to those instances when the psychiatrist determines or, pursuant to the standard of care of his profession, should determine that his patient poses a serious danger of violence to that readily identifiable individual. 124 Mich App 305.

In *Duvall v Goldin, supra,* this Court recently extended *Davis* to uphold a negligence claim against a physician based upon allegations analogous to those presented in the case at bar. The Court reasoned that, while *Davis* was factually limited to readily identifiable persons, *Davis* did not preclude the recognition of a special relationship and the imposition of a duty in a broader context. Rather, the *Davis* holding constituted an exception to the general foreseeability rule by limiting the psychiatrist's duty to only those readily identifiable persons threatened by his or her patient. Therefore, this Court found that the defendant in *Duvall* did have a special relationship with his patient, the so-called "dangerous person", which was sufficient to place the case within the

exception to the common-law rule that no one has a duty to protect an individual who is endangered by the conduct of another.

*Duvall* is in accord with decisions in other jurisdictions which have examined this issue. *Davis v Mangelsdorf,* 138 Ariz 207; 673 P2d 951 (Ariz App, 1983); *Gooden v Tips,* 651 SW2d 364 (Tex App, 1983); *Wharton Transport Corp v Bridges,* 606 SW2d 521 (Tenn, 1980); *Watkins v United States,* 589 F2d 214 (CA 5, 1979); *Freese v Lemmon,* 210 NW2d 576 (Iowa, 1973); *Kaiser v Suburban Transportation System,* 65 Wash 2d 461; 398 P2d 14 (1965).

We agree with Judge BRONSON's conclusion that, in the case at bar, defendant Dr. Capper owed a duty to plaintiff's decedent, an innocent driver within the scope of foreseeable risk, by virtue of his special relationship with Sharlyn Kuzilla.

We also agree with Judge BRONSON that this duty is sufficient to sustain a medical malpractice action. We recognize the the *Duval* Court found that the plaintiff's action was based upon general principles of negligence law rather than medical malpractice. We are also aware that apparently no court has directly addressed the issue of whether a case such as the one at bar may sound in malpractice absent a direct physician-patient relationship between the defendant doctor and the plaintiff. For reasons of public policy and logical consistency, we conclude, however, as Judge BRONSON did, that plaintiff's claim is one properly sounding in medical malpractice.

In *Delahunt v Finton,* 244 Mich 226, 230; 221 NW 168 (1928), the Supreme Court stated that malpractice constitutes "the negligent performance by a physician or surgeon of the duties devolved and incumbent upon him on account of his contractual relations with his patient". An

action in medical malpractice, therefore, is in essence a tort claim in negligence. See *Stitt v Mahaney*, 72 Mich App 120, 124-125; 249 NW2d 319 (1976), *rev'd on other grounds* 403 Mich 711; 272 NW2d 526 (1978).

Accordingly, in order for plaintiff to prove his claim against defendant, whether under negligence or malpractice, plaintiff must demonstrate: (1) the existence of a physician-patient relationship between defendant doctor and the third person who was a cause-in-fact of plaintiff's injuries; (2) breach of the applicable standard of care required by the doctor in the treatment of the patient; and (3) that the negligent treatment of the patient was a proximate cause of plaintiff's injuries. *Welke v Kuzilla, supra*, pp 677-678. Thus, to hold that the plaintiff's action may sound in negligence, but not in medical malpractice, would be to exalt form over substance.

We do not believe that our conclusion will open the floodgates to frivolous litigation. The stringent elements which must be set forth in order for the action to survive pretrial disposition are sufficient to safeguard against this possibility. We have already stated that the threshold question of whether a duty is owed to plaintiff by defendant is a question of law for the court's resolution. Whether such a duty exists depends "in part on foreseeability—whether it is foreseeable that the actor's conduct may create a risk of harm to the victim * * *". *Moning v Alfono*, 400 Mich 439. Further, in the narrow circumstances of this case, the concept of foreseeability entails the finding of some "special relationship" with either the dangerous person or the potential victim. *Davis v Lhim*, 124 Mich App 299. This "special relationship" exists where the physician determines or, pursuant to the standard of care, should determine

that his patient poses a serious threat of danger to a third person. *Id.,* p 300. We believe we impose no onerous burden by insisting that a physician abide by the standards of care of his profession.

We also believe that the possible imposition of liability in a case such as the case at bar comports with public policy concerns. While we do not intend to make physicians highway accident insurers, see *Duvall, supra,* we do believe that liability is properly imposed where a doctor's malpractice is the proximate cause of a plaintiff's injuries and where the doctor himself is in the best position to prevent the harm.

It may be argued that this opinion will cause physicians to eschew cases exposing them to such limitless liability or cause them to give ultraconservative advice in apprehension over the fate which may await them if they give otherwise sound medical counsel. See *Freese v Lemmon, supra* (LeGrand, J., *dissenting).* As was stated in *Davis v Lhim, supra,* however, regardless of this potential liability, we believe that doctors will comply in good faith with the standards of their medical profession.

It might also be argued that if such liability is imposed upon the medical profession the already oppressive cost of medical attention will be further increased. *Freese v Lemmon, supra.* But as Judge BRONSON pointed out in his dissent in the companion case to this appeal:

"In the typical malpractice action, the doctor is able to insure against the risk of liability through the required malpractice insurance. By characterizing the instant action as one in malpractice, the risk of liability now imposed upon the defendant is already insured against through his malpractice insurance in effect. It would be anomalous to impose liability on a doctor for injuries arising out of his treatment of a patient, and to

require the doctor to insure against this risk of liability
separately and distinctly from the risk imposed under
traditional malpractice actions." *Welke v Kuzilla, su-
pra,* p 680.

We agree with this reasoning.

Defendant also argues that plaintiff's complaint
fails to allege with sufficient specificity the basis of
his medical malpractice claim. We decline to re-
view this argument as it was not presented to the
trial court.

Reversed and remanded.

J. H. GILLIS, P.J., concurred.

R. M. DANIELS, J. *(dissenting).* The majority de-
cides that a physician may be liable for his alleged
medical malpractice to an unidentified third per-
son who might be injured by a patient's conduct
resulting from the physician's treatment of the
patient. I disagree and would affirm the trial
court's grant of partial summary judgment on this
issue.

As pointed out by the majority, the Supreme
Court held that medical malpractice constitutes
"the negligent performance by a physician or sur-
geon of the duties devolved and incumbent upon
him on account of his contractual relations with
his patient". *Delahunt v Finton,* 244 Mich 226,
230; 221 NW 168 (1928). The majority today ex-
tends this duty to persons not involved in the
physician-patient contractual relationship. The is-
sue here is "duty" not whether medical malprac-
tice is "in essence" a tort claim in negligence.
Thus, the majority's reliance upon *Duvall v Gol-
din,* 139 Mich App 342; 362 NW2d 275 (1984), is
misplaced. *Duvall* was an action sounding in negli-
gence, not medical malpractice. Without express-
ing any opinion upon whether I agree or disagree

with the *Duvall* decision, it simply fails to support the majority's conclusion in this case.

I likewise disagree with the majority's approach to having medical malpractice insurance serve as the lightning rod for permitting this kind of malpractice action. Today the cost of malpractice insurance is already reaching astronomical proportions. See, *e.g.,* The Detroit News, Friday, May 24, 1985, p 1A, *Doctors Organize for a Fight.* To say that the availability of medical malpractice insurance justifies the present claim ignores this most recent and disturbing phenomenon.

Accordingly, for these reasons, I vote to affirm the trial court's grant of partial summary judgment dismissing plaintiff's medical malpractice claim.