# STATE OF MICHIGAN

# COURT OF APPEALS

PATRICIA ALDRICH and ESTATE OF JUDITH
ANN KELLY, by WENDY MCKNIGHT,
Personal Representative,

       Plaintiffs-Appellees,

v

OHM SPECIALTY PHARMACY, LLC, doing
business as DOWNS PHARMACY,

       Defendant-Appellant,

and

CHIDOZIE JOSHUA ONONUJU, D.O., RAMON
RODRIGUEZ, M.D., and AMERICAN
MEDICAL MISSIONARY CARE, INC.,

       Defendants.

UNPUBLISHED
October 23, 2018

No. 338140
Saginaw Circuit Court
LC No. 16-028627-NO

Before: METER, P.J., and GADOLA and TUKEL, JJ.

PER CURIAM.

Defendant Downs Pharmacy (defendant) appeals by leave granted from an order denying its motion for summary disposition. We reverse.

In March 2013, non-party Kevin Haynes drove his vehicle across the center line of Gratiot Avenue in Saginaw, striking a vehicle driven by Patricia Aldrich. Aldrich's sisters, Judith Ann Kelly and Carol Lyle, were passengers in Aldrich's vehicle, and both incurred fatal injuries in the accident. Aldrich incurred non-fatal injuries. At the time of the accident, Haynes was using Fentanyl, a controlled substance he had obtained through defendant by way of a prescription written by Dr. Chidozie Ononuju.

Ononuju is the founder of American Medical Missionary Care, Inc. (AMMCI), and Haynes, who suffers from chronic pain, became his patient in 2011. At that time, Ononuju noted that Haynes had a history of narcotics dependency and was currently using drugs. He diagnosed Haynes with drug abuse. However, he managed Haynes's chronic pain with controlled substances that are highly abused, including Fentanyl, a synthetic opioid. Ononuju did not

-1-

require Haynes to sign a narcotics contract, implement a pain-management plan, or require Haynes to submit to drug screens to monitor his usage. The record does not indicate that Ononuju counseled Haynes regarding the risk of opioid addiction. According to Haynes, Ononuju advised him not to drive while taking Fentanyl.

Defendant is located in the same office complex as AMMCI. Haynes typically filled his prescriptions at defendant, although he also used other pharmacies. Haynes signed a "diversion control and substance abuse policy" when he began filling his prescriptions at defendant.

From 2011 to 2013, defendant continued to fill Haynes's prescriptions for Fentanyl and other controlled substances. AMMCI's physician assistant, Kenneth Was, generally visited Haynes in his home. On occasion, Haynes and Was disagreed on Haynes's medications, with Haynes requesting controlled substances and Was refusing to prescribe them. Was testified that there were times when, after he refused to prescribe controlled substances for a patient, the patient would obtain his or her desired medication from Ononuju. In its opinion, the trial court highlighted situations in 2012 and 2013 when Was declined to prescribe additional medication for Haynes and either Ononuju or a partner, Dr. Ramon Rodriguez, wrote a prescription.

The day before the accident, Was visited Haynes in his home. Was noted that he made no medication changes for Haynes and indicated that Haynes was to continue taking medications as prescribed. The next day, Haynes drove to AMMCI's office. He obtained two Fentanyl prescriptions written by Ononuju, who did not physically examine defendant that day. Haynes filled the prescriptions at defendant. Upon leaving, he put one Fentanyl patch in his mouth, contrary to the intended method of Fentanyl use. Haynes drove his car and caused the fatal crash.[1]

Plaintiffs brought this action, alleging claims of negligence and civil conspiracy against defendant, AMMCI, Ononuju, and Rodriguez.[2] They allege that defendant, AMMCI, Ononuju,

---

[1] The factual summary presented in this opinion is based on deposition testimony and other evidence such as medical records. The lower court, in reciting this same factual background, stated: "For the purpose of deciding [the summary-disposition motion] only, the following facts are accepted as true and construed in favor of [p]laintiff[s]." On appeal, defendant takes no issue with the trial court's recitation of the factual background, arguing, instead, that defendant owed no duty to plaintiffs because it had no relationship with them, because defendant could not foresee that Haynes would ingest Fentanyl patches and thereby harm plaintiffs, because statutory and regulatory provisions do not give rise to a duty, and because public-policy considerations do not support imposition of a duty. Defendant does take issue with the trial court's recitation of and partial reliance on evidence regarding a regulatory investigation that took place after the accident (see footnote 2, *infra*).

[2] Ononuju was the subject of a disciplinary proceeding in 2012, which resulted in a limitation of his medical license. The proceeding arose out of his alleged practice of prescribing controlled substances for reasons other than lawful diagnostic or therapeutic purposes. In addition,

and Rodriguez had a special relationship with Haynes based on Haynes's history of narcotics abuse and the allegedly unlawful and repeated furnishing of narcotics to Haynes. Plaintiffs allege that defendant, AMMCI, Ononuju, and Rodriguez, by unlawfully and repeatedly furnishing narcotics to Haynes, "created a situation where Mr. Haynes became an unreasonably dangerous individual." They further allege that it was foreseeable that Haynes would drive while intoxicated.

In a motion for summary disposition, defendant sought dismissal of plaintiffs' claims, arguing that it owed plaintiffs no duty. Defendant argued that no special relationship existed between it and Haynes so as to create a duty owed to plaintiffs.[3] It further argued that plaintiffs' injuries were not a foreseeable result of its proper filling of a facially valid prescription. Defendant argued that it was not foreseeable that Haynes would misuse the prescribed Fentanyl patch in violation of the diversion-control and substance-abuse policy he signed and after being told by Ononuju not to drive while using Fentanyl. It further argued that it was not foreseeable that Haynes would drive and cause an accident.

Plaintiffs argued, in part, that defendant filled the Fentanyl prescription in violation of administrative rules, such as the rule requiring a pharmacist to decline to fill a prescription if he or she has reason to believe that the medication will not be used for legitimate medical purposes. See Mich Admin Code, R 338.490(2). They argued that a special relationship arose as a consequence of defendant's filling of what plaintiffs asserted was an illegal prescription. Plaintiffs argued that it was foreseeable that Haynes would abuse the medication and cause harm to third persons.

The trial court found that a special relationship existed between defendant and Haynes based on the pharmacist-patient relationship and then considered whether defendant had a duty to protect plaintiffs from Haynes's actions based on factors set forth in *Terry v Detroit*, 226 Mich App 418; 573 NW2d 348 (1997). In summary, the court found that: (1) Haynes's actions were a foreseeable result of defendant's allegedly negligent medication-dispensing practices; (2) a causal connection existed between defendant's conduct in dispensing Fentanyl to Haynes and plaintiffs' damages; (3) it is proper to impose a duty on a pharmacy that is in a position to prevent harm by complying with the prohibition against filling prescriptions when there exist reasonable grounds to believe the medication will be misused; (4) consideration of moral blame supports the imposition of the duty on defendant; and (5) public-policy considerations support

---

defendant was the subject of an administrative investigation after the accident. That investigation revealed significant abnormalities in its dispensing practices.

[3] Defendant raised other arguments in support of its motion, but the only issue before this Court is the question of duty. The duty question was analyzed under MCR 2.116(C)(10).

the imposition of the duty. The court determined that defendant owed plaintiffs a duty and denied defendant's motion for summary disposition.[4]

Defendant contends that the trial court erred in denying its motion for summary disposition because it owed no duty to plaintiffs. This Court reviews de novo whether a duty exists. *Hill v Sears, Roebuck and Co*, 492 Mich 651, 659; 822 NW2d 190 (2012).

A negligence claim may be maintained only if there exists a legal duty "that requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm." *Graves v Warner Bros*, 253 Mich App 486, 492; 656 NW2d 195 (2002). To impose a duty on a defendant, the relationship between it and the plaintiff must be such "that a legal obligation should be imposed on one for the benefit of" the other. *Id*.

The *Hill* Court explained:

> At common law, "[t]he determination of whether a legal duty exists is a question of whether the relationship between the actor and the plaintiff gives rise to any legal obligation on the actor's part *to act* for the benefit of the subsequently injured person." "[T]he ultimate inquiry in determining whether a legal duty should be imposed is whether the social benefits of imposing a duty outweigh the social costs of imposing a duty." Factors relevant to the determination whether a legal duty exists include the "the relationship of the parties, the foreseeability of the harm, the burden on the defendant, and the nature of the risk presented." We have recognized, however, that "[t]he most important factor to be considered [in this analysis] is the relationship of the parties" and also that there can be no duty imposed when the harm is not foreseeable. In other words, "[b]efore a duty can be imposed, there must be a relationship between the parties and the harm must have been foreseeable." If either of these two factors is lacking, then it is unnecessary to consider any of the remaining factors. [*Hill*, 492 Mich at 661 (citations omitted; alterations in *Hill*).]

The Michigan Supreme Court has also stated that factors pertinent to the determination of the existence of a duty include the " 'foreseeability of the harm, degree of certainty of injury, closeness of connection between the conduct and injury, moral blame attached to the conduct, policy of preventing future harm, and . . . the burdens and consequences of imposing a duty and the resulting liability for breach.' " *Valcaniant v Detroit Edison Co*, 470 Mich 82, 86; 679 NW2d 689 (2004), quoting *Buczkowski v McKay*, 441 Mich 96, 101 n 4; 490 NW2d 330 (1992).

This case involves whether defendant owed a duty to plaintiffs to protect the vehicle occupants from the actions of a third party, Haynes. Generally, there exists no legal duty that imposes upon one person the obligation to aid or protect another. *Graves*, 253 Mich App at 493.

---

[4] The court rejected other aspects of defendant's summary-disposition motion and also denied summary disposition to AMMCI, Ononuju, and Rodriguez. These additional rulings are not at issue in this appeal.

A defendant has no duty to protect another from the criminal acts of a third party unless there exists a special relationship between the defendant and the plaintiff or the defendant and the third party. *Id.*

> The rationale behind imposing a duty to protect in these special relationships is based on control. In each situation one person entrusts himself to the control and protection of another, with a consequent loss of control to protect himself. The duty to protect is imposed upon the person in control because he is best able to provide a place of safety. [*Williams v Cunningham Drug Stores, Inc*, 429 Mich 495, 499; 418 NW2d 381 (1988) (citation omitted).]

In the third-party context, there exists a duty of reasonable care only as to " 'those persons readily identifiable as foreseeably endangered' " by the defendant's conduct. *Murdock v Higgins*, 454 Mich 46, 58; 559 NW2d 639 (1997), quoting *Marcelletti v Bathani*, 198 Mich App 655, 665; 500 NW2d 124 (1993); see also *Graves*, 253 Mich App at 494.

This Court has addressed the duty of a pharmacy towards a *patient* in some cases. In *Stebbins v Concord Wrigley Drugs, Inc*, 164 Mich App 204, 207; 416 NW2d 381 (1987), this Court addressed whether a pharmacy had a duty to warn a patient to whom it dispensed a prescription medication. The plaintiff was injured in an automobile accident with a patient who had filled a prescription at the defendant pharmacy. *Id.* She alleged that the defendant failed to warn the patient of the medication's side effects and to warn him not to drive after using the medication. *Id.*

This Court noted that "[a] pharmacist is generally not held liable for damages resulting from a correctly filled prescription." *Id*. at 216. It ruled that "a pharmacist has no duty to warn the patient of possible side effects of a prescribed medication where the prescription is proper on its face and neither the physician nor the manufacturer has required that any warning be given to the patient by the pharmacist." *Id*. at 218. Although the *Stebbins* Court did not specifically address whether the pharmacy owed "a duty" to the plaintiff herself rather than the patient, it determined that because the pharmacy did not have a duty to warn the patient, the pharmacy could not be held liable to the plaintiff. *Id*. at 215. The Court indicated that it "need not consider a pharmacist's liability in situations such as where the pharmacist knows of a particular patient's unique problems or where a pharmacist fills two incompatible prescriptions." *Id*. at 218.

This Court relied on the reasoning of *Stebbins* in *Adkins v Mong*, 168 Mich App 726, 728-729; 425 NW2d 151 (1988). The plaintiff brought negligence and malpractice claims against the defendant physicians and pharmacies for their prescribing and supplying the plaintiff with excessive amounts of controlled substances over the course of six years. *Id*. at 727. The plaintiff alleged that he became addicted to various substances as a result of the defendants' negligence and malpractice. *Id*. at 727. Relying on *Stebbins*, the Court ruled that the defendant pharmacy did not have a duty to warn the plaintiff of the potential side effects of the substances it was dispensing to him in accordance with the facially valid prescriptions it received. *Id*. at 728-729. The Court stated that a pharmacist has a duty to fill lawful prescriptions properly and will not generally be held liable when he or she correctly fills a prescription that was issued by a licensed physician. *Id*. at 729. The Court concluded that a pharmacist does not have a legal duty

"to monitor and intervene with a customer's reliance on drugs prescribed by a licensed treating physician." *Id*. at 732.

In a third case, *Kintigh v Abbott Pharmacy*, 200 Mich App 92, 94; 503 NW2d 657 (1993), this Court considered whether the defendant pharmacy owed the plaintiff a duty to refrain from selling him Schedule V, nonprescription controlled substances. This Court, relying on *Adkins*, found that the pharmacy owed the plaintiff no duty to discover his addicted status and, having no knowledge of this status, it "had no duty to refuse to sell to him." *Id*. The *Kintigh* Court stated that in *Adkins*, the panel had "rejected the theory that a pharmacist owed a customer a legal duty to monitor drug usage." *Id*.

In *Baker v Arbor Drugs, Inc*, 215 Mich App 198, 204; 544 NW2d 727 (1996), the Court, citing *Kintigh*, again stated that "[a] pharmacist . . . does not owe a duty to a customer to monitor drug usage."

Given these cases indicating that a pharmacy does not have a duty to warn a *patient* of the side effects of substances dispensed in accordance with a valid prescription or to monitor a patient's use of or reliance on substances prescribed by a treating physician, it would be illogical to impose such a duty on the pharmacist with respect to a *third party*. In essence, plaintiffs base their negligence claim on defendant's having repeatedly furnished narcotics to Haynes in accordance with facially valid prescriptions, but this is the type of activity that this Court has rejected as forming the basis of a duty by the pharmacy to the patient. In addition, in *Stebbins*, 164 Mich App at 215, the Court specifically noted that in the absence of a duty of the pharmacy towards the patient, the pharmacy could not be liable to a third party injured by the patient.

In *Baker*, 215 Mich App at 200-201, the plaintiff's decedent suffered a stroke because the defendant filled a prescription that was incompatible with another prescription he had been taking and which he had filled at the same pharmacy. The defendant used a computer system to monitor patients' medication profiles for adverse drug interactions, and the interaction had been detected. *Id*. at 201. This Court found that the defendant had voluntarily assumed a duty to use its computer program with due care and owed the plaintiff's decedent a duty. *Id*. at 205-206. In the present case, unlike in *Baker*, the issue was not a drug incompatibility but, according to plaintiffs' own brief, an abuse by Haynes of Fentanyl. But defendant was not under a duty to monitor the use of Fentanyl by Haynes, as discussed above.

Plaintiffs argue that defendant's actions were illegal because, according to plaintiffs, a pharmacist at defendant admitted to knowing that Haynes was using Ativan as part of his craving for drugs and thus knew he was a drug addict. Plaintiffs appear to be suggesting that, in such a situation, it was illegal for defendant to dispense Fentanyl. Plaintiffs cite the following testimony from the pharmacist's deposition:

> *Q*. Okay. So there's a change in the instructions as to how he's to take the [Ativan]?
>
> *A*. Even that one will say as needed on it. Whenever he needs, like, you know, when he feel [sic] like, you know, craving or something, then he can take that medication.

*Q.* A craving for what?

*A.* For, you know, anxiety or whatever, pain, anxiety.

*Q.* Like a craving for opioid drugs?

*A.* No.

Although the remainder of the colloquy is not in the lower-court record, plaintiffs claim that it proceeded as follows:

*A.* Even smokers can take the Lorazepam [Ativan].

*Q.* What would smokers take it for?

*A.* For a craving, you know. It reduces, you know. It reduces like, you know, abusing like, you know, too much smoking or if they want to quit smoking, you know, sometimes to reduce the anxiety they give Lorazepam . . . .

*Q.* Do you know or have you heard that opioid withdrawal can cause—

*A.* Anxiety sometime.

We need not address whether a duty towards plaintiffs would exist if defendant had knowledge of Haynes's addiction and misuse of Fentanyl because even accepting this deposition testimony and construing it in plaintiffs' favor, it simply does not establish knowledge on defendant's part of Haynes's alleged addiction. Plaintiffs contend that the testimony establishes that defendant provided medication to ease Haynes's "cravings" from drug addiction, but this is a stretch from the deposition testimony cited,[5] and plaintiffs fail to present other evidence sufficient to establish knowledge.[6]

Plaintiffs rely heavily on *Welke v Kuzilla*, 144 Mich App 245; 375 NW2d 403 (1985), and *Duvall v Goldin*, 139 Mich App 342; 362 NW2d 275 (1984), arguing that both cases support the foreseeability of the harm to plaintiffs in the present case and thus support the finding of a duty. These cases involved physicians treating individuals who later injured or killed third parties as a result of the physicians' allegedly improper treatment. *Welke*, 144 Mich App at 248; *Duvall*, 139 Mich App at 345-346. In *Duvall*, *id*. at 352, the Court expressly limited its holding "to the narrow facts set forth in this case." In *Welke*, 144 Mich App at 253, the Court, in finding a duty toward the injured third party, emphasized the breach of the standard of care in the

---

[5] The cited testimony indicates that Ativan can be used to curb cravings for drugs but does not indicate that Haynes himself was prescribed Ativan to combat an addiction to Fentanyl.

[6] We also reiterate that, before the accident, Haynes was not using Fentanyl as it was prescribed; he ingested a patch not meant for ingestion.

physician-patient relationship. The present case is fundamentally different because, as discussed, defendant was not under a duty to monitor the use of Fentanyl by Haynes.

Michigan caselaw does not allow for the imposition of a duty under the circumstances presented in the present case. Accordingly, the negligence claim against defendant is not viable. Because a claim for civil conspiracy requires the existence of a separate, actionable tort, *Advocacy Organization for Patients & Providers v Auto Club Ins Ass'n*, 257 Mich App 365, 384; 670 NW2d 569 (2003), and plaintiffs do not have a cause of action against defendant, the civil-conspiracy claim against defendant must also be dismissed.

Reversed and remanded for entry of judgment in favor of defendant and for further proceedings on plaintiffs' remaining claims. We do not retain jurisdiction.

/s/ Patrick M. Meter
/s/ Michael F. Gadola